IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JAMES MALOYD HUNTER, II,

        Petitioner,

v.                                                                          CRIMINAL ACTION NO. 2:23-cr-003

UNITED STATES OF AMERICA,

        Respondent.

*MEMORANDUM OPINION AND ORDER*

Before the Court is James Maloyd Hunter's ("Petitioner") *pro se* Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. ECF No. 35, 36 ("Pet'r's Mot."). The Government filed a Motion to Dismiss Petitioner's Motion. ECF No. 42 ("Mot. to Dismiss"). Petitioner responded. ECF No. 48 ("Pet'r's Resp."). The Court held an evidentiary hearing. ECF No. 568. The matter is now ripe for judicial determination. For the reasons stated below, Petitioner's § 2255 Motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

On January 4, 2023, Petitioner was named in a five-count indictment. ECF No. 1. Count One charged Petitioner with Kidnapping, in violation of 18 U.S.C. § 1201(a)(1). *Id.* Count Two charged Petitioner with Interstate Domestic Violence, in violation of 18 U.S.C. § 2261(a)(2) and (b)(3). *Id.* Count Three charged Petitioner with Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. §§ 924(c)(1)(A). *Id.* Count Four charged Petitioner with False Statement During Purchase of a Firearm, in violation of 18 U.S.C. § 922(a)(6) and 924(a)(2). *Id.* Count Five charged Petitioner with False Statement Causing Federally Licensed Firearms Dealer to Maintain False Records, in violation of 18 U.S.C. § 924(a)(1)(A). *Id.*

1

On January 24 and 25, 2023, Attorneys Keith Kimball and Suzanne Katchmar appeared as counsel in this case for Petitioner. ECF No. 9. On March 22, 2023, a Plea Agreement was entered. ECF No. 18. Petitioner pled guilty to Count One, Kidnapping. *Id.* On July 26, 2023, Petitioner was sentenced to 144 months' imprisonment and 5 years supervised release. ECF No. 27.

According to the Presentence Investigation Report ("PSR"), Petitioner kidnapped the mother of his child on May 19, 2022. Present. Investig. Rep. ¶ 1. At 5 a.m., Petitioner grabbed the victim off the street, "held a firearm against [her] head," and forced her into the back of his car. *Id.* ¶ 3. Petitioned strangled her and ziptied her hands together while driving the car from Norfolk, Virginia to Hocking County, Ohio. *Id.* ¶¶ 9, 10. Petitioner made a stop at a CVS in Harrisonburg, Virginia and accompanied the victim to the bathroom inside. *Id.* ¶ 9. While leaving the store, the victim mouthed "help" and "call 911" to the store clerk. *Id.* Eventually, Petitioner reached Hocking County and stopped at a PNC Bank across the street from the sheriff's office. *Id.* ¶ 11. When he pulled out of the parking lot, police surrounded his car and arrested him at the scene. *Id.*

After Petitioner was arrested, a search warrant was secured and executed on his car. *Id.* ¶ 13. Detectives found a package of zip ties, duct tape, a hunting-style knife, a pair of scissors, and a receipt of a denied transaction for a Ruger 9mm semiautomatic handgun. *Id.*

On July 26, 2024, Petitioner timely filed the instant *pro se* Motion to Vacate, Set Aside, or Correct a Sentence pursuant to 28 U.S.C. § 2255. Pet'r's Mot. Petitioner also filed a Supplemental Motion to Vacate on August 5, 2024. ECF No. 37. On November 12, 2024, the

Government responded to Petitioner's Motion. ECF No. 42. On January 30, 2025, ten days after the deadline for his reply, Petitioner replied. ECF No. 48.[1]

The Court appointed Attorney Fernando Groene to represent Petitioner on October 7, 2025. ECF No. 55. On March 3, 2026, the Court conducted an Evidentiary Hearing on the § 2255 Motion. ECF No. 68.

## II.    LEGAL STANDARD

### a.  Section 2255

Section 2255 allows a federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . [to] move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. In a § 2255 motion, the petitioner bears the burden of proving his or her claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

When deciding a § 2255 motion, the Court must promptly grant a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Motions under § 2255 generally "will not be allowed to do service for an appeal." *Sunal v. Large*, 332 U.S. 174, 178–79 (1947). For this reason, issues already fully litigated on direct appeal may not be raised again under the guise of a collateral attack. *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013). Issues that should have been raised on direct appeal are deemed waived, procedurally defaulted, and cannot be raised on a § 2255 Motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999).

However, an individual may raise a procedurally defaulted claim if he or she can show (1)

---

[1] Petitioner filed an interlocutory appeal to the Fourth Circuit in December 2024, which he later voluntarily dismissed. ECF No. 50. On December 1, 2025, Petitioner filed a writ of mandamus to the Fourth Circuit, which was denied. ECF No. 63.

3

"cause and actual prejudice resulting from the errors of which he complains;" or (2) that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack. . . . [meaning] the movant must show actual innocence by clear and convincing evidence." *Id.* at 492–93. To demonstrate cause and prejudice, a petitioner must show the errors "worked to [his or her] actual and substantial disadvantage, infecting [his or her] entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Ineffective assistance of counsel claims should generally be raised in a collateral motion instead of on direct appeal and constitute sufficient cause to review a procedurally defaulted claim. *See United States v. Benton*, 523 F.3d 424, 435 (4th Cir. 2008); *Mikalajunas*, 186 F.3d at 493.

### b. *Brady* Violation

The suppression of evidence favorable to the accused violates due process when the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 86 (1963). A court must vacate a conviction and order a new trial if the prosecution suppressed materially exculpatory evidence. *United States v. King*, 628 F.3d 693, 701 (4th Cir. 2011) (citing *Brady*, 373 U.S. at 83). To secure relief under *Brady*, a defendant must: (1) identify the existence of material evidence favorable to the accused; (2) show that the Government suppressed the evidence; and (3) demonstrate that the suppression was material. *Id.* at 701. When a *Brady* violation is alleged, the burden of proof rests with the defendant. *Id.* at 701–02 (citing *United States v. Stokes*, 261 F.3d 496, 502 (4th Cir. 2001)).

### c. Ineffective Assistance of Counsel

A viable ineffective assistance of counsel claim arises when "the counsel's conduct so undermined the proper functioning of the adversarial process that the trial did not result in a just outcome." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To prove a claim of ineffective

4

assistance of counsel, a petitioner must make two showings.

First, a petitioner must show that counsel's performance was deficient ("performance prong"). *Id.* at 687. Counsel's errors must have been so serious that he or she was not actually functioning as counsel as guaranteed by the Sixth Amendment. *Id.* To demonstrate deficient performance, a petitioner must show "that counsel's representation fell below an objective standard of reasonableness" under the prevailing norms of the legal community. *Id.* at 688.

"Judicial scrutiny of counsel's performance must be highly deferential," so "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. That presumption is even greater when counsel's decisions represent strategic, tactical decisions requiring "assessment and balancing of perceived benefits against perceived risks." *United States v. Terry*, 366 F.3d 312, 317 (4th Cir. 2004). A petitioner bears the burden of rebutting this presumption. *Strickland*, 466 U.S. at 689.

Second, a petitioner must show that the deficient performance prejudiced the defense ("prejudice prong"). *Id.* at 687. In other words, counsel's errors must have been so serious that the petitioner was deprived of a fair trial with a reliable result. *Id.* To demonstrate prejudice, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The Supreme Court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* In short, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

## III.   DISCUSSION

Petitioner moves the Court to vacate his conviction based on four grounds: (1) the Government committed a *Brady* violation by failing to provide Petitioner with evidence to justify transfer of this case from state court to federal court; (2) Petitioner's counsel were ineffective for failing to object to the Court's sentencing determination; (3) Petitioner's counsel were ineffective for failing to file a direct appeal after Petitioner requested; and (4) Petitioner's plea was not knowingly or voluntarily entered due to ineffective counsel. Pet'r's Mot. at 5–9. First, the Court will address the *Brady* claim. Then, the Court will analyze the last three claims together as they relate to ineffective assistance of counsel.

### A.   *Brady* claim

Petitioner first asserts that the Government committed a *Brady* violation by failing to provide Petitioner or the Court with evidence to justify the transfer of this case from state court to federal court. Pet'r's Mot. at 14. Petitioner also references Federal Rule of Criminal Procedure 16 in his challenge. *Id.*

The Court struggled to make sense of this challenge, both in briefing and at the evidentiary hearing. Petitioner repeatedly cited both the civil removal statute, 28 U.S.C. § 1441, and the criminal removal statute, 28 U.S.C. § 1455, to bolster his claim that this case was improperly removed. *See* Transcript at 32-33, 64. The Court understood Petitioner's argument as challenging this Court's jurisdiction because Petitioner himself did not remove his case from state court nor did he receive notice about removing the case from state court to federal court. Petitioner makes this argument to no avail. At the hearing, the Court explained to Petitioner that jurisdiction was proper in this Court because his indictment arose under federal statute. Evidentiary Hearing Transcript at 33:8-14.

As the Government noted in its brief, non-constitutional violations of federal law, such as those arising under the Federal Rules of Criminal Procedure, are not cognizable under § 2255. Mot. to

6

Dismiss at 8. Further, Petitioner has improperly invoked *Brady*, given there is no suppression of material evidence that pertains to Petitioner's potential guilt or innocence. Petitioner's indictment was properly filed in federal court because the charges arose under federal law. The Court is further unaware of any transfer of these charges from state to federal court. In any event, Petitioner would not be entitled to attorney work-product or information regarding such a transfer, nor would a lack of access to such information justify bringing a *Brady* claim against the Government. The Court appreciates that Petitioner is not an attorney and has no formal legal training; however, Petitioner declined to be represented by his appointed counsel. Evidentiary Hearing Transcript at 4:19-22. As such, Petitioner lacks some of the foundational understanding of legal concepts needed to develop and advance the necessary arguments.

Based on the foregoing, the Court denies Petitioner's *Brady* claim.

### B. Ineffective Assistance of Counsel

For purposes of this motion, Petitioner alleges his trial counsel, Keith Kimball and Suzanne Katchmar of the Office of the Federal Public Defender, provided ineffective assistance of counsel by failing to object to the sentencing guidelines, failing to file a direct appeal, and failing to explain the plea agreement to him, resulting in a guilty plea that was unknowingly or involuntarily entered. Pet'r's Mot. at 19.

To show ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and, secondly, that counsel's deficient performance prejudiced him. *See Strickland*, 466 U.S. at 687–88. "A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 669. However, "when a criminal defendant enters a guilty plea, 'he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" *Blackledge v. Perry*, 417 U.S. 21, 29–30 (1974). A defendant who pleads guilty is limited "to attacks on the voluntary and intelligent

7

nature of the guilty plea, through proof that the advice received from counsel was not 'within the range of competence demanded of attorneys in criminal cases.'" *Id.*

### *Failure to Object to Sentencing Enhancement*

The Court will first address Petitioner's claim that Assistant Federal Public Defender ("AFPD") Keith Kimball failed to object to the Court's sentencing determination. ECF No. 37-1 at 2. Specifically, it is Petitioner's belief that AFPD Kimball should have objected to the dangerous weapon enhancement that was applied to his sentencing as a result of his statement of facts including mention of a weapon, and that his failure to do so prejudiced Petitioner. *Id.* The Government counters this claim arguing that, first, it is not a cognizable claim under § 2255 and second, that Petitioner cannot show his counsel's performance was deficient or that he was prejudiced by any alleged deficient performance in any way. Mot. to Dismiss at 11.

While generally a petitioner may not challenge a perceived error in his Sentencing Guidelines calculation in a § 2255 motion, he may when arguing an ineffective assistance of counsel claim. *See Glover v. United States*, 531 U.S. 198, 204 (2001). To succeed on this basis, Petitioner must show both that there was an error in the guideline calculation and that his counsel was ineffective by failing to object to this error. *Id.*

Accordingly, the Court will first evaluate whether there was an error in the sentencing guidelines calculation. In this case, Petitioner signed a Statement of Facts. ECF No. 19. He took an oath, swearing that the Statement of Facts was accurate. *Id.* The Statement of Facts reads that Petitioner "held a firearm against D.C.'s head," and that "CC-2 acknowledged seeing [Petitioner] with a firearm in the vehicle." *Id.* Because Petitioner pled guilty to Kidnapping and the accompanying Statement of Facts described him using a firearm in the commission of that offense, the sentencing guideline enhancement for use of a dangerous commission was appropriate and not in error. *Id.*

8

Because there was no error in calculation Petitioner's sentence, the Court need not proceed further in the analysis. However, the Court also finds that AFPD Kimball and AFPD Katchmar did not provide ineffective assistance to Petitioner with respect to his sentencing enhancement. *Strickland* requires that reviewing courts afford counsel wide latitude to make strategic decisions. *Cox v. Weber*, 102 F.4th 663, 676 (4th Cir. 2024). Here, AFPD Kimball testified that he was aware of Petitioner's dissatisfaction with the enhancement and explained to Petitioner that there was no way to avoid the enhancement while moving forward with the plea agreement. Evidentiary Hearing Transcript at 20:21-25, 18:19-25. Further, AUSA Taylor inquired about whether Mr. Kimball had discussed with Petitioner what would happen if he lodged an objection to the application of the sentencing enhancement. *Id.* at 23:21-25, 24:1-23. AFPD Kimball testified that he had discussed that scenario with Petitioner. *Id.* AFPD Kimball described that conversation as telling Petitioner that he was concerned about objecting because they had already agreed to the mention of the firearm in the statement of facts. *Id.*

Additionally, in AFPD Kimball's affidavit, he stated, "objecting to the application of § 2A4.1(b)(3) would have been frivolous and would have likely led to the removal of the three-level 'acceptance of responsibility' reduction. Mr. Hunter had received in his guidelines (resulting in an increased guideline range). In other words, not objecting was in Mr. Hunter's best interest." ECF No. 42-1 at 4. AFPD Kimbell told Petitioner that they could not make a "credible objection to the enhancement." *Id.* Similarly, AFPD Kimball testified that it was "[c]learly in [Petitioner's] best interest not to object to that enhancement." Evidentiary Hearing Transcript at 24:22-23.[2] In essence, AFPD Kimball balanced the risks and benefits associated with the choices available to Petitioner. Counsel

---

[2] AFPD Kimball did make a separate objection to mention of "physical restraint" in the Presentence Report, which did not have to be litigated at the hearing because it was uncontested. *Id.* at 24:24-25, 25:1-6.

ultimately made a strategic decision to not object to the enhancement in order to preserve the best outcome for Petitioner.

The Court cannot find that counsel making a legitimate, well-considered, and strategic decision not to venture on a fruitless endeavor by objecting to the enhancement, and subsequently conveying this rationale to Petitioner, constitutes ineffective assistance of counsel. AFPD Kimball demonstrated a sound sentencing strategy. As such, the Court denies Petitioner's claim on this ground.

### *Failure to File a Direct Appeal*

Next, Petitioner avers that his counsel failed to file a direct appeal after he instructed them to do so. ECF No. 37-1 at 5.

The Supreme Court has stated that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). Typically, courts consider the important "facts concerning whether the defendant's conviction followed a trial or a guilty plea; whether the defendant received the sentence bargained for as part of the plea; and whether the plea expressly reserved or waived some or all appeal rights." *United States v. Cooper*, 617 F.3d 307, 313 (4th Cir. 2010).

First, the Court finds that Petitioner did not demonstrate that he wanted to appeal. Petitioner and his former counsel disagree as to whether Petitioner ever asked his counsel to appeal his case. *See* Evidentiary Hearing Transcript at 27-29. As such, the Court must weigh the evidence introduced at the hearing, as well as the credibility of each witness's testimony. Petitioner presented as having little to no credibility at the hearing, and Petitioner's brief does not credibly assert that his formal counsel disregarded his instruction to file an appeal. AFPD Kimball and AFPD Katchmar both individually testified that they discussed with Petitioner his appellate rights and his appellate waiver in the plea

agreement and, further, that had Petitioner instructed them to appeal, they would have filed an appeal. Evidentiary Hearing Transcript at 28:24-25, 29:1. Second, Petitioner agreed to plead guilty and received a favorable sentence within the guideline range as a result of AFPD Kimball's effective bargaining and representation. Because a plea agreement was entered, there were no nonfrivolous grounds left to appeal. Third, Petitioner did not reasonably demonstrate that he was interested in an appeal. During the Plea Agreement Hearing, Petitioner told the Court he reviewed the Plea Agreement, including his appellate rights, and discussed those rights with his attorney. *See* ECF No. 41. Moreover, Petitioner waived his right to appeal and indicated that to the Court. *Id.* Thus, the Court finds this challenge lacks merit.

<em><u>Guilty Plea Unknowingly or Involuntarily Entered</u></em>

Finally, Petitioner argues that his plea was not knowingly and voluntarily entered, and that his counsel's bad advice was the "but-for" cause of the guilty plea he entered. ECF No. 37-1 at 7. Petitioner offers a potpourri of examples to bolster this argument, which the Court has attempted to decipher. The Court understands Petitioner's primary argument to be that, had he known the Statement of Facts would have included mention of a firearm, he would not have pled guilty. Further, Petitioner disputes the inclusion of the firearm at all. *Id.*

Additionally, AFPD Kimball provided Petitioner with effective assistance by bargaining for a plea agreement that only included one of the five charges from the Indictment. ECF No. 18. AFPD Kimball successfully secured a sentence for Petitioner within the guidelines range after the Government argued for a sentence far above the guidelines range. ECF No. 26.

Petitioner entered his guilty plea knowingly and voluntarily. *See* ECF No. 41, Plea Agreement Hearing Transcript. Further, Petitioner was not required to swear to the Statement of Facts if he disagreed with them. However, Petitioner signed the Statement of Facts under oath and swore to the Court that he had read them and understood he could not come back at later time to dispute them. *See*

11

ECF No. 34, Sentencing Transcript. Petitioner cannot retroactively dispute that he did not voluntarily enter his plea without making the requisite showing—regret does not meet that standard.

## IV. CONCLUSION

For the reasons set forth above, Petitioner's Motion to Vacate, or Correct a Sentence Pursuant to 28 U.S.C. § 2255 is **DENIED**. ECF No. 35.

This Court may issue a certificate of appealability only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b)(1). This means that Petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)); *see United States v. Swaby*, 855 F.3d 233, 239 (4th Cir. 2017). Petitioner's claims are based upon incorrect interpretations of statutory provisions and judicial precedent. As such, Petitioner fails to demonstrate a substantial showing of a denial of a constitutional right, and a Certificate of Appealability is **DENIED**.

In addition, the Court **ADVISES** Petitioner that he may appeal from this Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The Clerk must receive this written notice within sixty (60) days from this Order's date. The Court **DIRECTS** the Clerk to provide a copy of this Order to all Parties.

**IT IS SO ORDERED**.

Norfolk, Virginia
May 13, 2026

Raymond A. Jackson
United States District Judge

12